IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MARK MORRIS,<br><br>            Plaintiff,<br><br>    v.<br><br>CAMDEN COUNTY PROSECUTOR'S OFFICE, *et al.*,<br><br>            Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:23-cv-03555-KMW-AMD<br><br>**MEMORANDUM OPINION** |

**Troy A. Archie, Esq.**
AFONSO ARCHIE LAW PC
21 Route 130 South
Cinnaminson, NJ 08077

*Counsel for Plaintiff Mark Morris*

**Michael B. McNeil, Esq.**
New Jersey Office of the Attorney General
25 Market Street
P.O. Box 112
Trenton, NJ 08625

*Counsel for Defendants Camden County Prosecutor's Office and Detective J. Miller*

**WILLIAMS, District Judge:**

### I. INTRODUCTION

Plaintiff Mark "Malik" Morris ("Plaintiff") brings this civil action alleging violations of his rights under federal and state law. In his Amended Complaint, Plaintiff alleges that he was the subject of a search warrant executed by agents of the Camden County Prosecutor's Office ("CCPO"), specifically defendant Detective J. Miller and an undisclosed number of unknown "John Doe" officers. Contraband was allegedly taken from Plaintiff's home, which later led the CCPO to charge Plaintiff with a drug offense. While Plaintiff does not dispute the validity of the search, he does claim that he was falsely charged, and accordingly brings claims against the officers for malicious prosecution.

1

Presently before the Court is Detective Miller's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff has opposed. For the reasons set forth below, the Motion to Dismiss is granted.

## II.     BACKGROUND

### A.    Relevant Facts

The facts of this case begin with a CCPO narcotics investigation commenced in the spring of 2021. According to the Amended Complaint, Detective Miller reportedly received information from a confidential informant ("CI") on May 30, 2021, alleging that Plaintiff was distributing heroine and oxycodone from his residence in Camden, New Jersey. *See* Am. Compl. ¶ 1. In the weeks that followed, the CI allegedly conducted two controlled purchases of oxycodone from Plaintiff's home—one during the week of June 6, and another during the week of June 27. *See id.* ¶¶ 2–3. After each transaction, the CI reportedly met with Miller at a predetermined location and surrendered the oxycodone. *See id.* ¶ 4. Based on the foregoing, Miller applied for and obtained a judicially authorized, no-knock search warrant for Plaintiff's residence, approving the search for drugs, drug paraphernalia, and other items commonly associated with drug distribution (*e.g.*, money, records). *See id.*, Ex. A.

On July 2, 2021, Miller and several other unnamed officers executed the search warrant and raided Plaintiff's home. *See id.* ¶ 4. During the search, Plaintiff claims that the officers broke his door and damaged walls. *See id.* ¶ 5. Plaintiff states that when the officers were initially unsuccessful in their search, they demanded to know where the drugs were hidden. *See id.* ¶ 6. According to Plaintiff, the officers were "not satisfied with [his] answer" and began "ripping furniture apart." *Id.* He also states that during this "deeper dive," one of the officers, "without care or caution," knocked his television off a mantle and broke it. *Id.* ¶¶ 6, 10.

At the conclusion of the search, the officers reportedly seized drug paraphernalia and other physical evidence of Seroquel, including a glass cylinder containing a "dark purple liquid" and "two empty pill bottles with the labels partially torn off." *See id.* ¶ 4; Ex. E at 4. Officers also seized approximately $6,888 in cash.[1] *See id.* Plaintiff was never arrested, though the CCPO subsequently charged him with possession with intent to distribute prescription legend drugs in violation of § 2C:35-10.5A(3) of the New Jersey Code of Criminal Justice. *See id.* ¶ 7.

Plaintiff alleges that, notwithstanding the institution of the charge, the CCPO never pursued his prosecution. He claims the drug charge remained pending for nearly a year, during which time the CCPO "never bothered to turn over any evidence or any proof." *Id.* ¶ 11. According to Plaintiff, following "numerous communications" between his counsel and the CCPO, the charge was eventually downgraded and consequently remanded to Camden City Municipal Court on June 9, 2022. *See id.* ¶ 10. Ultimately, on July 13, 2022, the case was dismissed for lack of prosecution. *See id.*

Plaintiff continues to deny any wrongdoing and expresses his belief that he was either mistakenly or wrongfully targeted. *See id.* at 1 n.1. In the present action, he claims that Miller and the unnamed officers violated his constitutional rights under both federal and state law by "falsely charg[ing]" him with a drug offense.

---

[1] In his Amended Complaint, Plaintiff claims that the officers confiscated $8,900, and further alleges that this money was actually the proceeds of a legitimate, non-criminal restaurant business. *See* Am. Compl. ¶ 4–5. While Plaintiff maintains that these funds were wrongfully taken, the Court does not read the Amended Complaint as asserting any constitutional violation separate from his malicious prosecution claims. First, Plaintiff states that this money was part of a separate, civil forfeiture action initiated by the State of New Jersey after it was seized. *See id.* ¶ 9. However, Plaintiff discloses that on May 22, 2022, he settled this dispute with the State for an undisclosed amount of money. *See id.* The only real controversy that can be ostensibly gleaned from these allegations is where Plaintiff emphasizes that he needlessly used the settlement proceeds to "satisfy his lawyer retainer agreement on the criminal case" for a charge that was ultimately dismissed. *Id.* At best, these allegations express a demand for compensatory damages in connection with his malicious prosecution claims, which are in any case the only causes of action that have been unequivocally asserted.

### B. Procedural History

Plaintiff commenced this action on June 30, 2023, initially naming as defendants the New Jersey Attorney General's Office, the Camden County Prosecutor's Office ("CCPO"), Camden County, Detective Miller, and ten unidentified "John Doe" officers. (ECF No. 1.) In his original eight-count Complaint, Plaintiff asserted claims under federal and state law for false arrest, malicious prosecution (both pre- and post-conviction), and violations of substantive due process. (*Id.*)

On November 13, 2023, the defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) Thereafter, on March 27, 2024, the parties stipulated to the dismissal of all claims against Camden County without prejudice, pursuant to Rule 41(a)(1)(A)(ii). (ECF No. 23.) On May 30, 2024, the Court granted the defendants' motion and dismissed the Complaint in its entirety. (ECF No. 31.) All claims were dismissed with prejudice, except for Plaintiff's individual-capacity malicious prosecution claims, for which the Court granted leave to amend. (*Id.*)

Plaintiff filed his Amended Complaint on July 13, 2024, asserting two counts for malicious prosecution under federal and state law against Miller and the John Doe officers. (ECF No. 34.) Miller has again moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6), which Plaintiff opposes. (ECF Nos. 38–40.) In accordance with Local Civil Rule 78.1, the Court decides the motion on the papers without oral argument.

### III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

IV.    **DISCUSSION**

As previously indicated, the Amended Complaint asserts two claims against Detective Miller for malicious prosecution under 42 U.S.C. § 1983 (Count I) and the New Jersey Civil Rights Act ("NJCRA"), N.J. STAT. ANN. § 10:6–1 (Count II). In his Motion, Detective Miller seeks dismissal of both counts, arguing that Plaintiff has failed to allege any wrongdoing.

Section 1983 and the NJCRA are not themselves sources of substantive rights, but rather provide the means for enforcing rights elsewhere conferred. *See Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002); *see also Coles v. Carlini*, 162 F. Supp. 3d 380, 404 (D.N.J. 2015). When

confronted with constitutional claims brought under either statute, courts begin their analysis by identifying "the exact contours of the underlying right said to have been violated" and determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (internal quotation marks omitted); *see also Endl v. New Jersey*, 5 F. Supp. 3d 689, 703 (D.N.J. 2014).

Here, Plaintiff claims that he was falsely charged and accordingly premises his malicious prosecution claims on the right to be free from unreasonable "seizures," as guaranteed by the Fourth Amendment to the United States Constitution and Article 1, Paragraph 7 of the New Jersey Constitution.

### A. <u>Malicious Prosecution</u>

To state a Fourth Amendment claim for malicious prosecution, a plaintiff must plead the following elements:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)). Under the New Jersey Constitution, a malicious prosecution claim consists of the first four of these elements, without the requirement that the plaintiff plead a liberty deprivation amounting to a "seizure." *See Roberts v. Cnty. of Essex*, 648 F. Supp. 3d 519, 535 (D.N.J. 2022). For purposes of Miller's Motion, the Court focuses only on the first, third, and fourth elements.

Although prosecutors are typically the officials responsible for bringing criminal charges against an individual, law enforcement officers may be held liable for malicious prosecution where they "influenced or participated in the decision to institute criminal proceedings." *Halsey*, 750 F.3d at 297; *see also Saint-Jean v. Cnty. of Bergen*, 509 F. Supp. 3d 87, 101 (D.N.J. 2020). Moreover,

as the core of a malicious prosecution claim is the lack of probable cause, a plaintiff must show that the officer misled prosecutors, or otherwise interfered with their informed discretion to bring criminal charges, by concealing or misrepresenting material facts. *See Halsey*, 750 F.3d at 297; *see also Le. L. v. Burlington Cnty.*, No. 20-6027, 2021 WL 6125777, at *3 (D.N.J. Dec. 28, 2021) (internal quotation marks omitted). At the pleading stage, a plaintiff must accordingly allege sufficient facts tending to show (1) that the officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood, and (2) that such statements or omissions were material or necessary to the prosecutor's probable cause determination. *See Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 748 (3d Cir. 2024); *see also Cuff v. Zee*, No. 23-22823, 2024 WL 5074728, at *6 (D.N.J. Dec. 10, 2024).

Here, the Amended Complaint has failed to plausibly allege the absence of probable cause to prosecute Plaintiff for a drug charge. Plaintiff does not dispute that the officers had probable cause to enter his home in the first instance. Nor does Plaintiff deny the existence of the physical evidence recovered from his home. *See* Am. Compl. ¶ 4. But while Plaintiff generally denies any wrongdoing and characterizes the drug charge as "false," he does not allege that Detective Miller–– –or any other officer for that matter—fabricated or misrepresented this evidence, withheld exculpatory information, or that he misled prosecutors in any manner. Rather, he speculates— based solely on the fact that the CCPO later downgraded and dismissed the charge—that the evidence must have been "faulty," and that the evidence was submitted only to "cover" or conceal the property damage allegedly caused during the search. These allegations miss their mark.

First, the CCPO's apparent abandonment of Plaintiff's drug charge does not imply that there was an absence of probable cause to charge him in the first instance. In fact, the disposition of a criminal charge "is irrelevant to the probable cause analysis." *Wright v. City of Philadelphia*,

409 F.3d 595, 602 (3d Cir. 2005); *see also Guzman v. City of Newark*, No. 20-6276, 2023 WL 373025, at *5 (D.N.J. Jan. 23, 2023) (holding that lack of probable cause to charge cannot be inferred from acquittal).

Moreover, Plaintiff has yet to offer a factual basis to plausibly conclude that Detective Miller improperly influenced the CCPO's decision to bring the drug charge against him. Nowhere in the Amended Complaint is it alleged that Miller made material misrepresentations to prosecutors, or that he in any way interfered with their probable cause determination. The only remotely relevant allegation of misconduct Plaintiff alleges is where he vaguely claims that Miller "provided the prosecution with faulty evidence." Am. Compl. ¶ 26. Plaintiff does not explain precisely what he means by "faulty" or identify any particular evidence. As far as the Court can discern, Plaintiff intends to say that—whatever evidence the prosecution relied on in bringing the charge—it must have been insufficient to secure a conviction given the CCPO's "lack of prosecution" and subsequent abandonment of his case. Am. Compl. ¶ 13. But again, that does not suggest a lack of probable cause, much less an improper influence of the prosecutors' judgment. *See, e.g.*, *Wright*, 409 F.3d at 602 (explaining that probable cause may exist even if suspect did not actually commit crime for which he has been charged) ("[T]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction."); *see also Guzman*, 2023 WL 373025, at *7 (D.N.J. Jan. 23, 2023) (dismissing malicious prosecution claim where complaint only made vague, conclusory claims of false information or evidence).

"Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being [charged]." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). Here, the Amended Complaint has failed to allege that

8

his drug charge was unsupported by probable cause, much less any misconduct on the part of Detective Miller. To the contrary, it is replete with allegations acknowledging evidence Miller obtained during a series of investigative steps—including information from the CI, the alleged controlled buys, and the seized contraband—all of which more readily suggest that probable cause existed. *See Khetani v. Plainsboro Twp.*, No. 23-534, 2024 WL 3861043, at *3 (D.N.J. Aug. 19, 2024) (dismissing malicious prosecution claim where factual allegations more readily established probable cause).

For all of these reasons, the Court grants Miller's Motion and dismisses the Amended Complaint. Having previously granted Plaintiff an opportunity to properly plead these claims, and observing no further request to amend, the Court's dismissal of the Amended Complaint is with prejudice.

B.  **Other Claims**

As previously indicated, the Amended Complaint asserts two counts—and only two counts—of malicious prosecution under federal and state law. However, in his Opposition to Miller's Motion, Plaintiff purports to raise separate Fourth Amendment claims that are not clearly asserted in his Amended Complaint. To add to the confusion, Plaintiff does not cite to any legal authority or offer any meaningful argument to support these purported theories of liability.[2] But even if these claims have been properly asserted, the factual allegations fall well short of stating any plausible claim for relief.

First, Plaintiff appears to assert a Fourth Amendment claim because his hands were allegedly "constrained against his will" during the officers' search. This is not a Fourth

---

[2] What is more, Plaintiff's Opposition also discusses claims that were previously dismissed with prejudice in connection with his initial Complaint.

Amendment violation. It is well established that police officers have the authority "to detain the occupants of the premises while a proper search is conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). That authority "is categorical and does not depend on the quantum of proof justifying detention." *Muehler v. Mena*, 544 U.S. 93, 93 (2005). Plaintiff has not alleged any facts suggesting that the duration, manner, or conditions of his detention were constitutionally unreasonable under the circumstances. *See Bailey v. United States*, 568 U.S. 186, 202 (2013) ("Detentions incident to the execution of a search warrant are reasonable under the Fourth Amendment because the limited intrusion on personal liberty is outweighed by the special law enforcement interests at stake."). Absent any such allegation, his brief physical restraint during the execution of a judicially authorized warrant does not give rise to a constitutional claim.

Second, Plaintiff appears to raise another Fourth Amendment claim based on the property damage the officers caused during the course of their search. But again, his allegations are insufficient. It is axiomatic that "officers executing search warrants on occasion must damage property in order to perform their duty." *Dalia v. United States*, 441 U.S. 238, 258 (1979). While "excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment," *United States v. Ramirez*, 523 U.S. 65, 71 (1998), Plaintiff does not allege any facts suggesting that the damage to the door, walls, or furniture were gratuitous or otherwise unrelated to the execution of the warrant. *Badillo v. Stopko*, 519 F. App'x 100, 107 (3d Cir. 2013) (affirming dismissal of claim where plaintiffs alleged "extensive property damage" during drug search, including "destroying furniture and punching holes in walls"). And even assuming that the accidental breaking of a television during a search could give rise to a Fourth Amendment violation, Plaintiff fails to allege that Detective Miller was the officer who caused the television to

fall—a deficiency that is fatal to any individual-capacity claim against him.[3] *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (reiterating the requirement of "personal involvement" in allegedly unconstitutional misconduct).

When the Court dismissed Plaintiff's original Complaint, it granted leave to amend specifically to allow him an opportunity to properly assert these claims and to support them with sufficient factual allegations. Despite that opportunity, the Amended Complaint remains deficient on both fronts. Because Plaintiff has neither cured the pleading defects nor requested further leave to amend, the Court will dismiss the Amended Complaint with prejudice.

V.   **CONCLUSION**

For all of the reasons articulated above, the Court grants Detective Miller's Motion and dismisses the Amended Complaint with prejudice.

Dated: April 30, 2025

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[3] Even assuming that Detective Miller was alleged to be the officer responsible for knocking over the television, the Amended Complaint explicitly couches this incident in terms of negligence or carelessness—allegations that would raise legitimate questions as to whether a redressable, constitutional injury even occurred. *See, e.g.*, *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989) ("[T]he Fourth Amendment addresses 'misuse of power,' . . . not the accidental effects of otherwise lawful government conduct."). The Court appreciates that Plaintiff's television might have been accidentally broken by an officer whose identity remains unknown to him. Even so, it would more readily appear that Plaintiff's remedy, if any, would lie in a state court action for tort—not a federal suit for a Fourth Amendment violation.